**TAMPA DIVISION**

Anthony Edward Laitta, Plaintiff,

Case No.: _____8:26-cv-1758-JLB-AEP_____

v.

**UNITED STATES DISTRICT COURT** JURY TRIAL DEMANDED
**MIDDLE DISTRICT OF FLORIDA**

PINELLAS COUNTY SHERIFF BOB
GUALTIERI, in my official capacity; LT. K.
JENKINS; LT. GUZMAN #56524; CPL.
DUESSLER #59273; SGT. W. KELLY;
SGT. V. FISCHER; CPL. A. HOPOVAC;
CPL. C. JOWELL; CLINIC SUPERVISOR
G. WISE; RN JOHNSON; A. SMITH;
JOHN/JANE DOE DETENTION DEPUTIES
1-20; JOHN/JANE DOE MEDICAL
PROVIDERS 1-10; and JOHN/JANE DOE
SUPERVISORS 1-10,

RCVD - USDC - FLMD - TPA
JUN 16 2025 PM2:41

Defendants.

### CIVIL RIGHTS COMPLAINT - INTAKE EXCESSIVE FORCE FOCUSED 42 U.S.C. § 1983; Fourteenth Amendment; First Amendment; ADA Title II / Rehabilitation Act; Jury Demand

### I. INTRODUCTION - THIS CASE STARTS WITH INTAKE FORCE

This case begins with the excessive force used during intake on the first night in Pinellas County Jail. Upon arriving, they immediately created a hostile environment through manipulative design. Again asking about an old case that was closed in 2016. I arrived injured, in pain, and asking for medical help. I was not violent. I was not refusing orders. I simply tensed up due to prior injuries and a lack of balance at that moment. They forced me into a position where I had no balance. Staff asked about my injuries, confirmed them, and then used excessive and brutal force directly against those same injuries. I find it an alarming pattern of authoritative abuse and manipulation.

The pattern was simple and brutal: identify what was injured, and apply excessive force to that part of my body, command me with an impossible order, "dont tense up", and punish the involuntary reaction. They then proceeded to taser me while strapping me into a restraint chair for over 20 seconds, and they also forced my head



and body against hard jail surfaces with brutal force. They then proceeded to write paperwork to make the excessive force look justified, or they ignored requests and inquires. Again, I was not refusing lawful orders. I had neck, back, shoulder, arm, foot, and head injuries. I also have documented head injury/TBI issues, PTSD, amnesia, and memory problems from prior accidents and from serving this nation overseas. I was in an IED blast that removed my helmet and nearly took my head off with a rock the size of me. Since that incident, I have had additional head injuries. At one point, my pupils refused to dilate correctly.

Instead of treating me like an injured person who needed medical evaluation, the staff immediately created a hostile environment and escalated the situation by creating the conditions and manipulating the situation for violence. The staff asked about my injuries, confirmed my injuries, and then used brutal and excessive force directly against those same injuries with the intent to apply unnecessary pain. That is the core of this case.

There is more than one incident described in my grievances where I recorded written reports of abuse, where excessive and unlawful disciplinary action was taken. I have tried to live by structure, duty, and accountability. In the military, one of the most important principles I learned was "lead by example." I believe that applies even more strongly to law enforcement and jail staff because they are trusted with authority over people who cannot simply walk away.

I prefer structured, defined, and constructive resolution. I do not believe excessive force, intimidation, defamation, manipulation, or abuse of disciplinary authority should replace lawful procedure. When a known wrongful action replaces duty, respect, and proper judgment, the answer should not be excessive and unlawful retaliation, revenge, or a lowered standard of conduct. The answer should be TRUE accountability through the legal process.

A jail should operate under clear standards and lawful procedures. It should be a place where safety, medical care, order, and criminal accountability are handled professionally. Not through manipulation and coercion. Instead, when staff create or escalate a situation, the situation degrades due to their actions. That is what happened here. The staff response was not constructive. All situations were poorly controlled and not medically reasonable. It was excessively forceful and degrading, lacking true justification in the paperwork.

I do not claim that I have lived a perfect life. But the law does not allow jail staff to lower their standards because they dislike a person, assume the worst of him, or decide to teach him a lesson by retaliating. People are a compilation of events and reactions, and how people react matters. We are a series of reactions through time. That includes how trained officers and jail staff react when dealing with an injured person in custody. There are clear, directive orders that can be issued to prevent situations like this. They have no right to dehumanize and degrade someone through coercive tactics.

I was born in this nation, and I am due the rights this nation requires. I was born here in Tampa, and I have served this nation for over 10 years. I believe in lawful process, not coercive and manipulative tactics. I believe disputes should be handled in

court with reliable evidence, proper procedure, and accountability. This case is before the Court because the unlawful and excessive force used against me was not a procedurally lawful process. It was an abuse of authority, followed by paperwork designed to excuse it, while I lack the means to retrieve it adequately in a timely manner. They controlled biased investigations lacking neutrality.

I intend to rely on my jail grievances because they were written close to the events, many within minutes, and others within days. These grievances are important because they record what I reported while the events were still fresh, before the facts could be distorted or minimized.

There is nothing wrong with who I am, and nothing in my grievances should be treated as an admission of violence. Nor do I find much error in my actions. In Grievance No. 24,333,167, I wrote that I was "in a great deal of pain," that I believed I may have broken my foot before being arrested, and that I did not agree with what the staff did after I arrived at the jail. They did not agree with the arrest or the conditions that led up to it. Those words describe an injured person reporting pain and objecting to staff conduct. They do not show that I was violent, threatening, or that force was justified against me. They instead proved violence.

Not to sound repetitive, but the grievances show that I entered the jail already injured and in need of protection and medical attention. Instead of protecting me, preserving my rights, and responding appropriately to my documented injuries, staff escalated the situation with brutal and unnecessary force. The events I described reflect an abuse of authority, a manipulation of facts, and an attempt to control the institutional record.

I am seeking accountability because constitutional rights are not supposed to depend on rank, status, popularity, or the personal opinions of past government employees. A jail is not a place where evidence should be buried through institutional control, coercion, or intimidation. My grievances were my attempt to preserve the truth when I had limited power, limited access to evidence, and limited ability to protect myself. The conduct described in my grievances was not merely poor judgment; it was a failure to lead by example and to respect the freedoms and rights this country promises to protect.

## Excessive Force During Intake and Later Cell Incident

When I arrived at the Pinellas County Jail, I had existing injuries to my neck, back, shoulder, arm, foot, and head. I had prior injuries from accidents and from serving this nation. I was in an IED when a rock half the size of me peeled my helmet off, while an additional fist-sized rocks smashed my skull. I also had documented head injury/TBI issues, PTSD, amnesia, memory problems, and pupil dilation. I was in pain and believed my foot was broken. This was not a situation that called for force in the first place. It called for caution, medical evaluation, and professional control of the situation.

During intake, I came in attentive and ready for instruction. The staff asked me if the arm they were handling was my broken or previously injured arm. I answered yes. The situation had not escalated yet. They instructed me not to tense up after unbalancing me. This was immediately followed by using excessive force, by twisting my previously broken arm in a violent manner, and handcuffing my wrist incorrectly to harm the arm. With the handcuffs intentionally latched so that they would dig into my wrists. They were controlling the situation to enable violence, when I showed nothing but typical human responses. After they applied pressure to my previously broken arm by twisting it, they continued by slamming me into the bench. Followed by hyperextending my joints, ligaments, tendons, fingers, arms, and shoulders. After handcuffing my hands behind my back, they threw me into a restraining chair not built for hands to be positioned behind someone's back. Once strapped into the restraining chair, they continued to tase me for over 20 seconds, with impossible and not applicable instructions "dont tense up, stop tensing up". Showing and proving extreme excessive force again. Tensing up was an involuntary pain response in addition to forcibly leaning over a bench.... I was not being violent. I was not attacking staff; instead, they controlled the situation to create a situation. It's difficult not to "tense up" while reacting to an unnecessary taser deployment and pain while staff violently twisted a previously broken arm that has extensive nerve damage, forcing handcuffs that were too small and poorly positioned onto me, and continued using pressure through injured areas while providing orders that were not realistic. The orders provided were, in fact, impossible. I can "not tense up" while being tasered.

After a situation in 2022 and this situation, my pupils refused to dilate correctly for years. The issue, however, started with a previous injury. The force did not stop. It continued through restraint, intentional injury, and wrongful blame. My grievance was kind because the event and they were manipulative: people are people, not items for staff to inflict intentional pain and injury due to prejudice and assumptive ideologies. I have had a lot of people waste my time for a VERY LONG time. Without good reason or process of reason. Required services are not privileges; they are the law. Medical care, safety, and safe basic control of force are requirements (within reason). Extensive force is to those who are intentionally being violent. If I were ready to follow orders, then I am ready. However, I am limited by my body's limitations. I know this because I was trained in these procedures.

Later, during a separate cell-and-paperwork incident, staff tried to get me to sign something without allowing me to read the document first. I mentioned that I refused to sign until I could read what I was signing. They provided violent force in response, hitting me with elbows and what I assumed were their fists, followed by hyperextending my arms. They continued to hang me by my arms behind my back, followed by excessive force while pressing the arches of my feet against the steel bed's edge, flexing the bones. This incident in which staff came into my cell in the middle of the night, beat me, and threatened to break my feet, but they denied the allegations. They essentially created a one-way street for allegations.

This is the core of the case: staff knew about the injuries, asked about them, confirmed them, and then used force against those same injuries. Intending to create a painful situation. Afterward, the paperwork was drafted to protect the people who used

the force by recasting pain, fear, and involuntary tensing as "resistance." I'm getting tired of people asking about my 2016 case. I am also getting tired of people manipulating conditions and information around me. Trust within a community is essential, and that especially comes from the force. Human rights shouldn't come last.

## II. JURISDICTION, VENUE, AND GOVERNING LAW

This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because this action arises under the United States Constitution, 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act. This Court also has jurisdiction under 28 U.S.C. § 1343.

The venue is proper in the Middle District of Florida, Tampa Division, because the events occurred at the Pinellas County Jail and related Pinellas County locations. However, I am willing to bring this to whoever needs to see this series of events, coercion, and manipulation. I have my rights and liberties, and I no longer wear a uniform. The actions taken against me are more than dehumanizing; they are sick, and it's a form of mobbing.

I was a pretrial detainee. I had not been convicted of the charges for which I was being held. The relative force standard is objective unreasonableness under Kingsley v. Hendrickson. This was not a relevant force but an intention to harm and control the situation, creating a hate crime. The relevant pretrial-detainee framework is Bell v. Wolfish, which prohibits punishment before conviction. Disciplinary punishment requires basic due process under Wolff v. McDonnell. I plead those standards because jail staff did not have a blank check to injure, restrain, threaten,  and then write the incident in their own favor.

## III. PARTIES

I, Anthony Edward Laitta, am a former pretrial detainee at the Pinellas County Jail. I am an  Army veteran with documented head injury/TBI, PTSD, amnesia, memory problems, and physical injuries involving my neck, back, head, right foot, shoulders, elbows, wrists, arms, and joints. I repeatedly reported pain, injury, and the need for medical care. They ignored my request for X-rays and pain medication.

Defendant Bob Gualtieri is the Sheriff of Pinellas County, Florida. Sheriff Gualtieri is sued in his official capacity for PCSO jail policies, customs, training, supervision, discipline, and the manipulation of grievances and systems, medical-care systems, evidence retention, classification practices, and the jail practices that caused or allowed the violations confirmed at their facility. Equality and constitutional rights are not a question, nor did I ever question it. When I tried to retrieve evidence by calling the sheriff's department, the clerk of court, and the jail, they sent me in circles, denying me

easy access to relevant and documented evidence of the situation. I call this controlling the narrative to save face.

Defendants Lt. K. Jenkins, Lt. Guzman #56524, Cpl. Duessler #59273, Sgt. W. Kelly, Sgt. V. Fischer, Cpl. A. Hopovac, Cpl. C. Jowell, Clinic Supervisor, G. Wise, RN, Johnson, A. Smith, and John/Jane Doe Defendants are sued in their individual capacities for their own acts, omissions, force, threats, paperwork, medical decisions, grievance responses, disciplinary decisions, failures to intervene, and supervisory failures.

Doe detention deputies include staff involved in intake, receiving, holding cells, handcuffing, restraint-chair placement, taser use or taser-related control, cell entries, force inside cells, head pressure against a bench, pressure against a steel bed, housing moves, threats, classification, grievance handling, and disciplinary confinement. I cannot identify every Doe Defendant without discovery because staff names were not provided, and Defendants control the video and logs.

Doe medical providers include staff who handled sick-call requests, medical grievances, X-ray requests, pain-medication requests, injury complaints, footwear requests, reading-glass requests, refusal forms, and head injury/PTSD medical concerns.

## IV. FACTUAL ALLEGATIONS - SEQUENCE OF EVENTS

### A. Intake: staff confirmed I was injured and then used force against the injuries

When I arrived at the jail, I had neck, back, shoulder, arm, head, and foot injuries. I was trying to get to the hospital that day for an evaluation. I was in a great deal of pain. I believed my foot was broken or had a hairline fracture. I had prior injuries from accidents and from military service. I had documented head injury/TBI issues and PTSD. I was not being violent and was not refusing lawful orders. I did tense up.

The staff asked me about my arm. They asked whether this was my broken arm. When I answered yes, they forcibly twisted with the intent to harm and shame. With that same arm, they placed me into handcuffs that were many sizes too small. They continued to injure the arm after they had been placed on notice that it was already injured.

Staff told me not to tense up. That instruction was physically impossible because they were forcibly leaning me over the edge of the desk, creating a sensation of falling, in addition to having injuries. A person cannot simply "not tense up" while an injured arm is being twisted, handcuffs are too small, pain is increasing, and staff is using excessive force, in addition to being tasered. All at the same time. While being placed into a chair not designed for handcuffs to be behind my back. I later witnessed the chair

designed for this type of restraint. Tensing up was an involuntary reaction to pain, fear, restraint, and injury. Staff used that natural reaction as the excuse to escalate extreme and excessive force.

After placing me in handcuffs that were too small, the staff shoved me into a restraint chair that was not built for handcuffs behind the back in that manner. They strapped me into the chair while my arms were behind me, and my handcuffs were improperly placed. They continued to tase me for more than 20 seconds while screaming at me to comply with orders. Perfect physical compliance was impossible because I was already restrained, in pain, trapped by the chair, and being shocked.

I allege that the extreme force was manufactured for the situation. Staff asked about injuries, got confirmation of injuries, and then decided to use excessive force. They used phrases like "don't tense up" while creating the very painful restraint that made tensing unavoidable.

Later, staff forced my head against a bench despite my prior head injury history. Again, my pupils refused to dilate correctly for years. I allege this was beyond dangerous, unnecessary, and reckless use of force because staff knew or should have known that head pressure could worsen symptoms from a documented head injury/TBI and PTSD.

Inside the jail cell, after I stated that I needed to read what I was being asked to sign, the staff used excessive force against me instead of allowing me to read the document. They pushed my previously injured foot against the edge of the steel bed, flexing the bones and aggravating the injury. They leveraged my body while my arms were behind my back, effectively hanging or pulling me by my arms while I was restrained.

These acts were not secure. These acts were punishment. They were using pain to obtain control that they already possessed, narrative building, and lying. Manipulation of the law they are in charge of… the very people I fought and almost died for. This includes defamation, sexual defamation, and abusive coercion, controlling the situation for a desired outcome; I was not attacking the staff. The worst I did was voice my opinion on the situation. I was injured, excessively restrained with the intent to inflict pain and turmoil, while trying to understand what I was being forced to sign. They hit me, hyperextended my arms, and induced pain in several already established injuries. Not to sound repetitive, but this includes my TBI from 2010 and 2011, 2017, 2018, and 2022. While allowing others to create a hostile environment.

This type of manipulation has happened to me in the past already in 2022. I know my training, and I know what's right and wrong. I'm not saying I'm right in all situations, but I know when something is excessive.

**B. My grievance words show the claim was made immediately and specifically**

In Staff Member Grievance #24,333,167, submitted May 1, 2025, from 3F-POD06, I wrote that I was "in a great deal of pain," that I thought I had broken my

foot before being arrested, and that I did not agree with the staff's actions after I arrived. The grievance places the jail on notice that I was injured before and at intake and that staff used force after knowing or being told about my injuries.

The same grievance reported that staff "threw me in a cell," applied pressure to my "previously  broken arm," and did so "after asking if it was broken." I wrote that the staff continued the pressure by "hyperextending my joints, ligaments, tendons, fingers, arms, and shoulders." They never lacked control of the situation to find non-compliance.

I wrote that people are not items for staff to inflict intentional pain on "with a lack of good reason." I wrote that refusing required services was wrong, and that "these are not privileges but requirements."

I further wrote that a group of staff came into my cell in the middle of the night, "beat me," and  "threatened to break my feet." The point of this pleading is to prove excessive force and manipulation of the law. The point is that I reported force, injury, threats, and the targeting of known injuries through the jail's own grievance system.

When I appealed, I explained that I could not resubmit with staff names because I did not know their names, that it was a group of around four, and that the cameras should show it. That is exactly why discovery is necessary. Defendants control the staff names, video, logs, and records.

The sheriff's office charges more than what is typically found for documents. The costs are a fraction of the costs in other states and counties.

## C. The jail's own response confirms a documented force, restraint, and video-review event

PCSO's response does not erase the force. It confirms that the event involved staff contact,  handcuffs, a holding cell, a restraint safety chair, transfer to housing, and DVR/video review.  That matters because this was not an invisible or unsupported complaint. It was a documented force/restraint event, and the jail controlled the video, staff identities, logs, and records.

The central issue is not whether jail staff later chose words that favored themselves. The issue is whether staff caused pain, restraint, fear, shock, and pressure on known injuries, then wrote the event to blame me for my body's natural reaction to that pain.

The video (if the video still exists) should answer the question that matters: was I attacking staff, or did staff manipulate the situation into a force event against an injured detainee? I allege the video will show excessive force, not justified use of force.

## D. Medical care was denied, delayed, or papered over after the force

After the force, I repeatedly requested medical care, X-rays, pain treatment, and safe footwear. I  complained of right foot pain and possible broken foot or arch injury,

shoulder pain, elbow pain,  wrist pain, arm pain, neck and back pain, and head injury concerns.

I allege the jail treated medical care as a privilege and a paperwork problem rather than a requirement. My grievance words were direct: "Refusing services required is wrong. These are  not privileges but requirements."

I allege medical requests were redirected, delayed, minimized, or closed. I asked for X-rays of my right foot, elbow, and shoulder. I reported unnatural prominence in the right foot and continuing pain. I allege staff refused or delayed appropriate evaluation even though the force incident and my prior injury history made the need obvious.

I also allege the clinic tried to have me sign paperwork that, in substance, would make it look like care had been refused. I did not refuse care. I refused to sign blindly or sign false paperwork.  Staff allegedly signed or recorded refusal paperwork anyway.

## E. Forced signing, disciplinary pressure, and paperwork used as a shield

I allege that staff tried to force me to sign documents before I was allowed to read and understand them. When I stated I needed to read what I was signing, the staff used force and pressure instead of allowing review.

On or about May 11, 2025, I reported that staff threatened additional time in "the hole" if I  refused to sign paperwork, and offered less time if I agreed to the findings and signed blindly. I  allege the findings were incorrect and that violence against me.

I also allege that paperwork changed or misstated the location, including changing the location to 4F8 when the relevant housing was 3F6. That matters because wrong locations can hide video,  confuse the record, and protect staff from accountability.

I later received DR #SD 25-0591 for "Fighting with Another Person" and 15 days of disciplinary confinement with loss of privileges. I allege the disciplinary process was not a real search for truth. It was staff investigating staff and paperwork rubber-stamping staff's own version.

## F. Failure to protect and later blame

I warned staff about unsafe housing and threats before I was later blamed and disciplined. I  reported that a guy on a boat was threatening everyone over cleaning, and that another inmate, identified as James or "Guest," was involved in a conflict over the wall tablet. The response was  "Thanks, under review." I allege that "under review" did not protect anyone.

I allege that staff ignored warnings, let the conflict develop, and then used the result as another reason to punish me. The pattern was: ignore the warning, let danger happen, blame me, and write the record in the jail's favor.

## G. Arrest background preserved, but this complaint focuses on jail force

I deny physically striking, hitting, battering, or intentionally touching any alleged victim in either underlying incident. In the first car situation, a man on a motorcycle chased me down. I was trying to get away from him. He approached my vehicle,

reached into or through my window,  and took pictures or video-recorded me while I was trying to leave and get away from him. I did not hit him. I did not physically touch him. The charges do not reflect what actually happened in that situation.

In the second incident, I yelled for an ambulance because I believed my foot was broken.  Someone named Gary accused me of assault. I deny hitting, touching, or physically injuring  Gary. During the second arrest, officers did read me my Miranda rights. My second-arrest claim is not based on Miranda. It is based on the broken vehicle window, removal from the vehicle,  arrest despite a medical emergency, and towing of a vehicle that was secured in my family's parking area.

I plead the arrest facts as context because the charges and jail paperwork do not reflect the full situation. The core of this complaint is the intake force and what happened inside the jail: I  entered injured, I needed medical care, staff used force against known injuries, staff kept harassing and pressuring me in jail, and the jail record was written in a way that favored staff instead of the truth.

Because jail staff kept harassing me, pressuring me, blaming me, limiting my ability to explain the full situation, and using jail conditions against me, I felt like I had to get out of the jail. That pressure matters. I do not believe I had appropriate legal support and backing at the time. My attorney failed to fully discuss the jail conditions, the intake force, the harassment, the medical issues, the lack of video review, and the pressure I was under. I felt trapped between continued jail harassment and a criminal process where my side of the story was not being developed or defended the way it should have been.

I am not asking this Court to decide the criminal case inside this complaint. I am preserving the facts because the jail conditions, harassment, lack of meaningful legal support, and failure to discuss the actual sequence of events affected my ability to stand up for myself and made me feel forced to get out rather than fully litigate the facts from inside the jail.

## H. Legal access, grievances, and records

I used the jail grievance system because that was the system available to me. I filed grievances and appeals regarding staffing levels, medical denials, records, disciplinary findings, unsafe housing, and legal communication issues.

I allege the grievance system narrowed and controlled my complaints. Staff demanded one issue per request, told me to resubmit with names I did not have, closed issues as not grievances or duplicates, and kept the video and staff identities under jail control.

Public Records Request P153222-062525, dated June 25, 2025, requested all written correspondence from me from the time of my April 2025 arrest through my release on June 25, 2025, including responses from jail personnel. PCSO was on notice that the written record mattered.

The evidence that must be preserved includes intake video, holding-cell video, cell video, restraint-chair video, handcuff records, taser logs/downloads, use-of-force reports, staff rosters, medical records, sick-call logs, refusal forms, grievance metadata, deleted/closed grievances, disciplinary records, housing logs, tablet/message records, phone records, vehicle-window damage records, towing records, and all policies governing force, restraints, medical care, grievances, and head injury/PTSD handling.

## V. CLAIMS FOR RELIEF

### Count I - Fourteenth Amendment Excessive Force / Objective Unreasonableness - 42 U.S.C. § 1983

I was a pretrial detainee. Defendants could use reasonable security measures, but they could not use objectively unreasonable force against an injured detainee who was not violent and was not refusing lawful orders, aside from what they view as tensing up in a situation I found impossible not to be slightly tense.

Defendants used or allowed force including twisting a known injured arm, handcuffing me with cuffs too small, shoving me into a restraint chair while cuffed behind my back, strapping me down, tasing me for more than 20 seconds, screaming commands that were physically impossible to obey, forcing my head against a bench despite known head injury concerns, pressing my injured foot against the edge of a steel bed, and leveraging my restrained arms behind my back.

The force was unnecessary, punitive, degrading, and objectively unreasonable. Staff caused pain, restraint, shock, and pressure on known injuries, then used the body's involuntary reaction as their excuse for more force.

### Count II - Fourteenth Amendment Denial or Delay of Medical Care - 42 U.S.C. § 1983

I had serious medical needs: documented head injury/TBI, PTSD, amnesia/memory issues, neck/back/shoulder/arm injuries, suspected right foot injury, wrist/elbow pain, and pain caused by force/restraints.

Defendants knew of these needs through direct complaints, visible pain, grievances, sick-call requests, medical requests, and my statements that I believed my foot was broken and needed medical care.

Defendants denied, delayed, minimized, or papered over the need for care, including X-rays, pain treatment, safe footwear, and follow-up evaluation.

### Count III - Fourteenth Amendment Failure to Protect / Unsafe Conditions - 42 U.S.C. § 1983

I warned staff about inmate threats and unsafe housing conditions before I was later blamed and disciplined for a conflict.

Defendants had notice of risk through grievances and direct complaints, but

failed to take reasonable protective action.

Defendants cannot ignore warnings and then punish me for the predictable consequences of ignoring the danger.

### Count IV - First Amendment Retaliation and Interference with Grievances - 42 U.S.C. § 1983

I filed grievances and requests about force, medical denial, unsafe housing, records, and disciplinary issues.

Defendants responded through intimidation, narrowing, delay, refusal, "not a grievance" closures, pressure to sign, threats of more overtime, and staff investigating staff.

These actions would chill a person of ordinary firmness from continuing to complain and seek help.

### Count V - Procedural Due Process / Disciplinary Punishment - Fourteenth Amendment - 42 U.S.C. § 1983

I received disciplinary punishment, including 15 days of disciplinary confinement with loss of privileges, in DR #SD 25-0591.

I allege the process was defective because the location/facts were wrong or shifted, I was pressured to sign, I did not receive meaningful access to video and evidence, and staff rubber-stamped their own version.

The punishment was tied to a record controlled by Defendants and built after I had already complained about force and unsafe conditions.

### Count VI - ADA Title II / Rehabilitation Act - Head Injury, PTSD, and Medical Needs

I had documented head injury/TBI, PTSD, amnesia, memory problems, and physical injuries. Staff knew or should have known that pain, fear, confusion, memory problems, and involuntary tensing could be symptoms and reactions rather than defiance.

Defendants failed to reasonably modify intake, communication, paperwork, medical handling, grievance access, and discipline to account for my documented head injury and PTSD needs.

Instead of slowing down, explaining, allowing me to read forms, avoiding pressure on known injuries, and getting a medical evaluation, Defendants escalated force and punishment.

### Count VII - Official-Capacity / Policy, Custom, Failure to Train, and Ratification

The Sheriff and official jail system are liable because the violations arose from jail practices, customs, training failures, supervision failures, medical-care systems, grievance systems, restraint practices, discipline practices, evidence-control practices, and staff-review practices.

The policy/custom problem includes force-first intake, treating medical care as

optional, using paperwork to protect staff, staff investigating staff, limiting grievances, failing to preserve and disclose evidence, and failing to train staff to handle detainees with documented head injury/PTSD and prior physical injuries.

## VI. INJURIES

I suffered and/or aggravated injuries to my neck, back, head, shoulders, arms, wrists, elbows, fingers, joints, and right foot; pain from too-small handcuffs, restraint-chair placement, taser related force, pressure, twisting, and leverage; worsening head injury/PTSD symptoms; memory and anxiety issues; fear, humiliation, and loss of safety; and denial/delay of needed medical evaluation and care.

I also suffered disciplinary confinement, loss of privileges, emotional distress, aggravation of military-related trauma, legal-access harm, and continuing pain requiring outside medical evaluation.

## VII. EXHAUSTION / GRIEVANCES

I used the available grievance system. Relevant records include, among others, Staff Member  Grievance #24,333,167; DIU Grievance #24,333,217; Inmate Records Grievance #24,342,137;

Generic Request #24,478,720; DR Findings Appeal #24,482,252; medical requests and grievances regarding X-rays, pain, footwear, and injuries; and public records request P153222- 062525.

To the extent Defendants argue non-exhaustion, I allege the grievance process was made unavailable or obstructed by limits, closures, demands for staff names I did not have, "not a grievance" rulings, duplicate closures, delayed responses, final/closed responses, and staff control over the records and video.

## VIII. REQUEST FOR RELIEF

1. Damages in the amount of $5,000,000, or another amount determined by a jury, for physical injury, pain, aggravation of head injury/PTSD symptoms, emotional distress, medical delay, disciplinary confinement, legal-access harm, vehicle/window/towing-related losses, and related damages.

2. Punitive damages, included within or awarded in addition to the amount allowed by law and determined by the jury, against individual defendants whose conduct was malicious,  reckless, callous, punitive, or deliberately indifferent.

3. Declaratory judgment that Defendants violated my constitutional and federal statutory rights. 4. Injunctive relief requiring preservation and production of relevant video, logs, medical records, grievances, metadata, and policies; and requiring policy changes regarding intake force, restraint-chair use, medical evaluation, head injury/PTSD handling, grievance integrity, and evidence preservation.

5. Costs, litigation expenses, nominal damages if needed, and any other relief the Court and jury find just.

## IX. JURY DEMAND

I demand a trial by jury on all claims so triable.

## X. SIGNATURE AND VERIFICATION

Dated: June 15, 2026

Respectfully submitted,

_____

Anthony Edward Laitta, Pro Se
524 MLK Jr St S, Apt 106
Saint Petersburg, FL 33701
Phone: 727-325-0533

## VERIFICATION

I declare under penalty of perjury that the factual allegations in this Complaint are true and correct to the best of my knowledge, memory, and belief. I understand that some facts require discovery because Defendants control the video, logs, medical records, grievance metadata, and staff identities.

Dated: June 15, 2026

_____

Anthony Edward Laitta, Pro Se
524 MLK Jr St S, Apt 106
Saint Petersburg, FL 33701
Phone: 727-325-0533